John **GIBSON**, Appellant,

v.

Al **ELLIS**, Appellee.

No. 05–98–01795–CV.

Court of Appeals of Texas, Dallas.

Oct. 17, 2001.

---

John Lee Gibson, Dallas, for appellant.

Mel Bailey, Gary D. Elliston, John William Arnold, DeHay & Elliston, Dallas, for appellee.

Before Justices LAGARDE, JAMES, and DODSON.[1]

## OPINION

Opinion By Justice CARLTON B. DODSON, (Retired).

Appellant John Gibson (Gibson) sued his former attorney, Al Ellis, claiming Ellis wrongfully paid an expert witness out of Gibson's share of a settlement. The trial court granted summary judgment in favor of Ellis. In five issues, Gibson generally complains the trial court erred in concluding his breach of contract, breach of fiduciary duty, negligence, fraud, and DTPA claims were barred by limitations. In a sixth issue, he claims the trial court erred in concluding Gibson was not a consumer pursuant to the DTPA. For the reasons set forth below, we agree with Gibson. Accordingly, we reverse and remand this cause for further proceedings.

### FACTUAL BACKGROUND

Ellis represented Gibson and his wife, Cathy Gibson, in a personal injury suit arising from an automobile accident that occurred in 1990. In the course of representing the Gibsons, Ellis issued several "letters of protection" to various healthcare providers guaranteeing payment for their services from proceeds recovered in the case.[2] One of the letters was issued to Dr. Harvey Powers, a psychologist who had treated Mrs. Gibson for several years for depression. The letter of protection to Powers, dated August 25, 1992, stated:

Please be advised that I am willing to protect your bill for services rendered to Cathy Gibson as a result of the above-referenced automobile accident out of any settlement or judgment which might be obtained on her behalf.

Please send us a copy of your itemized statement in this regard for our records.

While representing the Gibsons, Ellis became aware that the Gibsons had a potential claim against an attorney who had represented them in a chapter seven bankruptcy proceeding filed in 1991. Cathy Gibson claimed that her bankruptcy attorney had taken advantage of her fragile emotional state by making unwanted sexual advances to her and causing her mental distress that aggravated her depression. On the basis of these allegations, Ellis agreed to also represent the Gibsons in a malpractice action against the bankruptcy attorney. Ellis planned to use Powers as a witness in both cases.

In late 1992, Ellis settled both John Gibson's and Cathy Gibson's claims in the automobile case for a payment of $100,000 each. Shortly thereafter, Ellis notified two healthcare providers that he was withdrawing letters of protection he had previously provided to them because he had subsequently learned that the debts owed to these creditors had been discharged in the Gibsons' personal bankruptcy in 1991. Although the debt owed to Powers' medical clinic for his treatment of Cathy Gibson also had been discharged in bankruptcy, Ellis did not withdraw the letter of protection he provided to Powers.

In January 1993, Ellis obtained Gibson's agreement in writing to disburse funds from his settlement in the automobile case.

---

1. The Honorable Carlton B. Dodson, Justice, Court of Appeals, Seventh District of Texas at Amarillo, Retired, sitting by assignment.

2. "Letters of protection" are sometimes used by attorneys in personal injury litigation to guarantee payment to healthcare providers

out of the proceeds of any future recovery. *See, e.g., Brown v. Comm'n for Lawyer Discipline,* 980 S.W.2d 675, 678 (Tex.App.—San Antonio 1998, no pet.); *Belt v. Comm'n for Lawyer Discipline,* 970 S.W.2d 571, 573 (Tex. App.—Dallas 1997, no pet.).

The agreement provided that Powers was to be paid $11,840 from Mr. Gibson's share of the settlement. A separate statement for Cathy Gibson showed she was to contribute only $135 from her share of the settlement. Gibson alleges he asked Ellis why Powers should be paid from Gibson's share of the settlement. According to Gibson, Ellis responded that Powers needed to be paid because: (1) the debt to Powers was a community debt; (2) it was "standard practice" to pay it; and (3) Ellis had provided Powers with a letter of protection.

According to Gibson, he later became disenchanted with the malpractice claim against the bankruptcy attorney and non-suited his claim in late 1993. In 1994, the Gibsons divorced and, as part of the divorce settlement, Cathy Gibson was awarded her claim against the bankruptcy attorney as her separate property. Ellis continued to represent Cathy Gibson.

Gibson further alleges that in 1995, he began to doubt whether Ellis' statements in 1993 were true regarding the reasons for paying Powers from Gibson's share of the settlement in the automobile case. That year, Gibson had two conferences with Ellis regarding the payment to Powers. The first was by telephone in January, and the second was at Ellis' office in March. Gibson alleges that during these conversations Ellis continued to misrepresent the reasons for the payment to Powers. Gibson contends he had no reason to disbelieve Ellis until he reviewed documents Ellis provided him for the first time in 1995 and conducted research at the Dallas public library in September of that year.

On July 30, 1997, Gibson filed suit against Ellis seeking recovery of $10,800 in funds paid to Powers out of Gibson's settlement in the automobile case, as well as punitive damages and attorney's fees. In his final amended petition, Gibson asserted claims for fraud, legal malpractice, negligence, breach of fiduciary duty, breach of contract and warranty, and DTPA violations. In two motions for summary judgment, which collectively addressed each of Gibson's claims, Ellis argued that all Gibson's claims were barred by either the two-year or four-year statute of limitations. Ellis also asserted that Gibson was not a consumer under the DTPA. In response, Gibson asserted that his claims were timely filed under both the discovery rule and the doctrine of fraudulent concealment because Ellis concealed his wrongdoing and Gibson could not have discovered the wrongdoing until he conducted legal research in September 1995. Gibson also maintained he was a consumer. The trial court granted both motions for summary judgment and rendered a take-nothing judgment in favor of Ellis. Ellis then non-suited his counterclaim, rendering the summary judgment final. This appeal followed.

## STANDARD OF REVIEW

When reviewing a traditional summary judgment, we adhere to the following well-known standards:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant moving for summary judgment on the affirma-

tive defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). Thus, the defendant must conclusively prove when the cause of action accrued and negate the discovery rule, if it applies and has been pleaded or otherwise raised. *Id.* If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

### LIMITATIONS CLAIMS

We address Gibson's first five issues together because all involve application of the discovery rule to Ellis' affirmative defense of limitations. In each issue, Gibson contends the trial court erred in granting summary judgment based on limitations because the discovery rule applies, and Gibson contends he could not have discovered his claims until September 1995, less than two years prior to filing suit.

Preliminarily, we note that the parties have not clearly distinguished in their appellate briefs between the doctrine of fraudulent concealment and the discovery rule, and at times they have used the terms interchangeably. It is necessary, however, to distinguish between the two because while both concepts serve to extend the statute of limitations, "each is characterized by different substantive and procedural rules." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). This in turn impacts our summary judgment analysis. Therefore, we must first determine whether Gibson properly invoked the discovery rule in the court below in addition to the doctrine of fraudulent concealment.

■ "The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Computer Assocs., Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996). The discovery rule is a very limited exception to statutes of limitation. *Id.* It is applicable in cases "where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* at 456. A party seeking to avail itself of the discovery rule must plead the rule or otherwise raise it in response to a defendant's assertion of limitations as a matter in avoidance. *KPMG Peat Marwick*, 988 S.W.2d at 748; *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex.1988).

■ The discovery rule applies equally to breach of contract, negligence, and fraud claims. *Wilson v. John Daugherty Realtors, Inc.*, 981 S.W.2d 723, 727 (Tex. App.—Hous. [1st Dist.] 1998, no pet.); *Heron Fin. Corp. v. U.S. Testing Co.*, 926 S.W.2d 329, 332 (Tex.App.—Austin 1996, writ denied). Furthermore, the supreme court has specifically held that the discovery rule is applicable to legal malpractice actions. *See Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex.1988). In *Willis*, the supreme court held that the special relationship between an attorney and client justifies imposition of the discovery rule. The court reasoned:

A fiduciary relationship exists between attorney and client. As a fiduciary, an attorney is obligated to render a full and fair disclosure of facts material to the client's representation. The client must feel free to rely on his attorney's advice. Facts which might ordinarily require investigation likely may not excite suspicion where a fiduciary relationship is involved. Further, breach of the duty to disclose is tantamount to concealment.

*Id.* at 645 (citations omitted).

■ A different analysis, however, applies to fraudulent concealment. When

fraudulent concealment is raised, limitations is deferred "because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations · has run." *S.V.*, 933 S.W.2d at 6. Thus, the supreme court has stated:

> Although similar in effect, the discovery rule exception and deferral based on fraud or concealment exist for different reasons. Unlike the discovery rule exception, deferral in the context of fraud or concealment resembles equitable estoppel. "[F]raudulent concealment estops the defendant from relying on the statute of limitations as an affirmative defense to [the] plaintiff's claim." *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983).

*Computer Assocs.*, 918 S.W.2d at 456. Fraudulent concealment therefore "tolls the statute [of limitations] until the fraud is discovered or could have been discovered with reasonable diligence." *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex.1997). Stated differently, the doctrine of fraudulent concealment concerns whether, and for how long, the statute of limitations is tolled; on the other hand, the discovery rule determines when a cause of action accrues. *Arabian Shield Dev. Co. v. Hunt*, 808 S.W.2d 577, 585 (Tex.App.—Dallas 1991, writ denied).

■■■■■ This difference in the two concepts causes us to apply different procedural rules when a party asserting limitations moves for summary judgment. When the plaintiff has pleaded the discovery rule, the defendant must negate the rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990). The burden, however, is the opposite for fraudulent concealment.

Fraudulent concealment is in the nature of an "affirmative defense" to the adverse party's plea of limitations. *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994). Therefore, the party asserting fraudulent concealment has the burden of raising it in response to the summary judgment motion and must come forward with evidence raising a fact issue on each element of fraudulent concealment. *Id.; see also KPMG Peat Marwick*, 988 S.W.2d at 749.

■■■■■ In the present case, Gibson contends in his summary judgment response that he "pled, together and out of the same set of facts, the discovery rule and the doctrine of fraudulent concealment." In his live pleading, however, Gibson did not clearly plead both the discovery rule and the doctrine of fraudulent concealment; rather, he appears to have merged the two together. Specifically, he states, "Due to Defendant's fraudulent concealment, the Plaintiff could not have discovered his claim until September of 1995."

■■■■■ We are required to view pleadings liberally, and we will give a party the benefit of the doubt as to whether the discovery rule has been properly pleaded. *See Arabian Shield*, 808 S.W.2d at 584; *see also Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982). We note that the discovery rule is commonly applied in legal malpractice actions where, as here, it is alleged that a fiduciary with superior knowledge took advantage of a client. Furthermore, the distinction between the discovery rule and fraudulent concealment often may be blurred in legal malpractice actions where the failure to disclose is tantamount to concealment. *See Willis*, 760 S.W.2d at 645. Moreover, Gibson specifically invoked the discovery rule in his summary judgment response. We therefore conclude, as we did in *Arabian Shield*, that in the context of this case

Gibson's pleading of fraudulent concealment was also intended to be an implicit pleading of the discovery rule. *See Arabian Shield,* 808 S.W.2d at 584. This conclusion is not only consistent with our summary judgment standard that we resolve all doubts in favor of the nonmovant, it is also consistent with Ellis' understanding of Gibson's position. On appeal, Ellis has not disputed that Gibson adequately raised the discovery rule before the trial court, and throughout his brief Ellis repeatedly acknowledges that the issue before this Court is how far the discovery rule extends the limitations period under the facts of this case.

 Nonetheless, despite his recognition that Gibson raised the discovery rule, Ellis contends Gibson had the burden of establishing a fact issue as to when he was on notice of his claims. In doing so, Ellis incorrectly attempts to reverse the burden. The movant in a traditional motion for summary judgment has the burden of negating the discovery rule by proving as a matter of law that there is no genuine issue of material fact as to when the plaintiff discovered or should have discovered the nature of the injury. *KPMG Peat Marwick,* 988 S.W.2d at 748. Only after the movant establishes that limitations bars the action as a matter of law must the plaintiff adduce summary judgment proof raising a fact issue in avoidance of limitations. *Id.* "The burden never shifts to the non-movant until the movant has established its entitlement to a summary judgment as a matter of law." *Hubert v. Ill. State Assistance Comm'n,* 867 S.W.2d 160, 162 (Tex.App.—Houston [14th Dist.] 1993, no writ) (citing *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989)). Therefore, the burden was on Ellis to establish when Gibson discovered, or with the exercise of reasonable diligence should have discovered, facts which put him on notice of his claims.

Unless Ellis met his initial summary judgment burden, we have no occasion to examine Gibson's summary judgment evidence.

The record reveals that Ellis' summary judgment evidence is wholly lacking on the issue of the discovery rule. The only evidence Ellis offered regarding when Gibson first obtained knowledge of his claims was that Gibson approved disbursement of the funds to Powers in January 1993. This is not Gibson's complaint as we understand it. Although Gibson concedes he consented to the payment, he contends he did so because Ellis misrepresented that Gibson was liable for the payment, it was protected out of the settlement proceeds, and it was standard practice to protect Powers' bill regardless of whether the debt had been discharged in bankruptcy. Gibson asserts that, at the time Ellis made these representations, Ellis knew but failed to disclose that Powers was protected only from Cathy Gibson's recovery and that Ellis had withdrawn letters of protection to two other healthcare providers precisely because of the Gibsons' bankruptcy, but did not for Powers. On the basis of these facts, Gibson contends Ellis knew Gibson was not responsible for the payment to Powers and it was not standard practice to pay Powers regardless of the bankruptcy. Ellis, however, made no attempt whatsoever to prove when Gibson discovered or should have discovered the facts on which he relies for his allegations that Ellis' representations were false. Simply showing that Gibson knew of the payment does not negate the discovery rule because it does not address when Gibson knew or should have known that the payment, allegedly, was made wrongfully. *Cf. Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex.1977) (holding that physician's affidavit which did no more than establish the last date physician saw patient did not constitute proof negating the discovery rule). Because Ellis

failed to meet his summary judgment burden of negating the discovery rule, we sustain Gibson's first five issues.

## DTPA CLAIM

 Because Ellis also moved for summary judgment on Gibson's DTPA claim on the alternative ground that Gibson was not a consumer, we must also address Gibson's sixth issue challenging that ground. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex.1970); *Smith v. Tilton*, 3 S.W.3d 77, 83 (Tex. App.—Dallas 1999, no pet.). Again, as the movant, Ellis had the burden to negate as a matter of law that Gibson was a consumer within the meaning of the DTPA. Ellis contends Gibson was not a consumer because the DTPA was amended in 1995 to exempt claims for "damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." *See* TEX. BUS. & COM.CODE ANN. § 17.49(c) (Vernon Supp.2001).[3]

However, the balance of the amended statute, after establishing a general exemption, provides four exceptions:

This exemption does not apply to:
(1) an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion;
(2) a failure to disclose information in violation of Section 17 .46(b)(23);
(3) an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion; or
(4) breach of an express warranty that cannot be characterized as advice, judgment, or opinion.

*Id.*

In his summary judgment evidence, Ellis does not address any of the alleged misrepresentations which form the basis of Gibson's DTPA claim. Therefore, he did not establish as a matter of law that these representations do not fall within the exceptions provided in section 17.49(c). Ellis therefore failed to sustain his summary judgment burden on this issue as well. Accordingly, we also resolve Gibson's sixth issue in his favor.

We reverse the summary judgment and remand this cause for further proceedings.

---

**3.** The amendment applies to all claims that accrued prior to its effective date of September 1, 1995 and were filed on or after September 1, 1996. Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 20(a), (b), 1995 Tex. Gen. Laws 2988, 3004.