John GIBSON, Appellant,

v.

Al ELLIS, Appellee.

No. 05–02–01640–CV.

Court of Appeals of Texas,
Dallas.

Feb. 3, 2004.

Frank William McIntyre, Dallas, for Appellant.

Melvin David Bailey, Bailey/Crowe & Kugler, L.L.P., Thad D. Spalding, Hermes Sargent Bates, L.L.P., Dallas, for Appellee.

Before Justices MORRIS, WRIGHT, and RICHTER.

## OPINION

Opinion by Justice MORRIS.

This is an appeal from a legal malpractice case. The trial court granted a take-nothing judgment on appellant John Gibson's affirmative claims against appellee Al Ellis and awarded Ellis $41,000 in attorney's fees on his counterclaim. Gibson delineates eleven issues in his appeal. He contends the trial court erred in the following ways: by failing to grant judgment as a matter of law on several of his causes of action, by granting a take-nothing summary judgment on his claims for negligence and violations of the Deceptive Trade Practices Act, by denying his motions for continuance, by excluding certain evidence at trial, and by finding that his lawsuit was groundless. For the reasons set forth below, we affirm the trial court's judgment.

## I.

The parties' dispute arises from a personal injury lawsuit Ellis handled for Gibson and his wife Cathy. Ellis took over the Gibsons' case after their first attorney died. Ellis agreed to work under the former attorney's contingency fee agreement with the Gibsons. Cathy's claim settled in November 2002 for $100,000. On January 19, 2003, Gibson's personal injury claim settled for $100,000 also. From Gibson's settlement, Ellis deducted $33,333.33 for attorney's fees and subtracted $13,190 in doctors' bills incurred for Cathy's treatment and examination. Gibson filed this lawsuit against Ellis on July 30, 1997, complaining about the deductions from his settlement proceeds and Ellis's explanations for them. Gibson asserted claims for breach of fiduciary duty, fraud, negligence, breach of contract, and violations of the Deceptive Trade Practices Act. Ellis filed a counterclaim seeking attorney's fees under rule 13 of the Texas Rules of Civil Procedure and section 17.50(c) of the DTPA.

Shortly before the scheduled trial date, the trial court granted a take-nothing summary judgment on Gibson's DTPA and negligence claims concluding they were barred by limitations.[1] Gibson's breach of fiduciary duty and fraud claims were tried before a jury, which rendered a verdict against him.[2] Ellis's counterclaim was tried before the court without a jury. The trial court awarded Ellis $41,000 in attorney's fees. Gibson timely perfected his appeal.[3]

---

1. This was the second time the trial court granted summary judgment on these claims. We reversed the trial court's first summary judgment on these claims and remanded them to the trial court because Ellis's summary judgment motion did not contain any evidence to negate the discovery rule or Gibson's status as a consumer. *See Gibson v. Ellis,* 58 S.W.3d 818 (Tex.App.-Dallas 2001, no pet.)

2. Gibson's breach of contract claim was not submitted to the jury.

3. Because Gibson's brief contains no issue assigning error to the trial court's disposition of his contract claim, that issue is not before us and we express no opinion about it.

## II.

In his first four issues, Gibson contends he is entitled to judgment as a matter of law on several of the causes of action he asserted against Ellis. After the trial court signed its judgment, Gibson moved for judgment notwithstanding the jury's verdict and also for a new trial. Ellis contends Gibson has waived his first four issues by failing to obtain a written ruling on his motion for judgment before his motion for new trial was overruled by operation of law. Gibson argues the trial court implicitly overruled his motion while it retained plenary jurisdiction and, therefore, his first four issues are preserved for our review. *See* Tex.R.App. P. 33.1(a)(2)(A). Because of the lack of clarity in the trial court record, we will assume the trial court timely denied Gibson's motion for judgment notwithstanding the verdict and address the substance of Gibson's first four issues. For Gibson to prevail on these issues, however, the evidence must conclusively prove facts that establish his right as a matter of law to a judgment on the specified causes of action. *See Cain v. Pruett*, 938 S.W.2d 152, 160 (Tex.App.-Dallas 1996, no pet.). In effect, we apply the same standard of review in evaluating the trial court's denial of Gibson's motion for judgment notwithstanding the verdict as we would if Gibson had moved for a directed verdict on the causes of action for which he had the burden of proof. *See id.*

In his first issue, Gibson complains his contingency fee agreement with Ellis was voidable as a matter of law because it was not in writing as required by section 82.065 of the government code and rule 1.04(d) of the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Gov't Code Ann. § 82.065 (Vernon 1998); Tex. Disciplinary r. prof'l conduct 1.04(d), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R.

art X. § 9). Despite Gibson's statements to the contrary, however, the record establishes that Gibson never had a contingency fee agreement with Ellis. The only contingency fee agreement in the record was between Gibson and his former attorney. The contingency fee agreement with the former attorney authorized the deduction of $33,333.33 in attorney's fees from the settlement. Ellis provided uncontradicted testimony that pursuant to Gibson's agreement with his former attorney, Ellis forwarded the entire $33,333.33 in attorney's fees deducted from Gibson's settlement to the former attorney's estate. The estate then paid Ellis $7,500 for his services on the case. There is nothing in the record to suggest Ellis had a contingency fee agreement with Gibson. Section 82.065 simply is not applicable to the facts here. And Gibson's claim that Ellis violated rule 1.04(d) of the Texas Disciplinary Rules of Professional Conduct is not well taken for the same reason. We also reject Gibson's argument under this issue that Ellis charged Gibson an excessive fee contrary to rule 1.04(a) of the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Gov't Code Ann. § 82.065 (Vernon 1998); Tex. Disciplinary r. prof'l conduct 1.04(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art X. § 9). The record is devoid of any evidence that the attorney's fees Gibson paid were excessive. Contrary to Gibson's argument, the undisputed fact that Ellis was willing to accept $7,500 for his work does not prove as a matter of law that either Ellis's $7,500 fee or the total contractual contingency fee was excessive.

Gibson also asserts the former attorney's contingency fee agreement violated rules 1.04(c) and 1.04(d) of the Texas Disciplinary Rules of Professional Conduct because it did not indicate whether attor-

ney's fees were to be taken before or after expenses were deducted. Because Gibson did not include this argument in his motion or otherwise present it to the trial court, he has not preserved it for review. *See* Tex.R.App. P. 33.1. We resolve appellant's first issue against him.

In issues two, three, and four, Gibson contends he established his breach of fiduciary duty, negligence, and DTPA claims as matter of law. To support his position, he relies on his testimony that Ellis misinformed him that Gibson was obligated to pay the $13,190 in doctors' bills. Gibson indicated Ellis told him the bills were subject to letters of protection and were community debts. We first address Gibson's breach of fiduciary duty claim.

An attorney has a fiduciary duty to his client. *See Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988). The essence of a claim for breach of that duty involves the "integrity and fidelity" of an attorney and focuses on whether an attorney obtained an improper benefit from representing the client. *See Kimleco Petroleum, Inc. v. Morrison & Shelton,* 91 S.W.3d 921, 923 (Tex.App.-Fort Worth 2002, pet. denied). An attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends. *Goffney v. Rabson,* 56 S.W.3d 186, 193 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

The evidence shows that Ellis did not specifically deny telling Gibson the doctors' bills were community debts and covered by letters of protection. Even if the statements were made and were in fact false, there was no conclusive evidence that Ellis knew of their falsity at the time

they were made or that they were made for the purpose of subordinating Gibson's interests. Both Ellis and Gibson's wife Cathy testified Gibson expressly requested the $13,190 in doctors' bills be taken from his settlement so they would receive as much cash out of Cathy's settlement as possible. Based on the testimony, the jury could have found the statements attributed to Ellis, if made, were simply made in error after Ellis complied with Gibson's request.

We also reject Gibson's argument that Ellis breached his fiduciary duty as a matter of law by failing to advise Gibson that: (1) any arrangement to pay the doctors' bills from Gibson's settlement violated disciplinary rule 1.14 and (2) Ellis might have personal liability for the bills. Again, even assuming Gibson's legal assertions are true, the evidence did not conclusively establish the omissions were made for the purposes of achieving an improper benefit from Ellis's representation of Gibson. We resolve Gibson's second issue against him.

In his third and fourth issues, Gibson applies the arguments set forth in issue two to his negligence and DTPA claims. He argues the evidence adduced at trial showed as a matter of law that Ellis was professionally negligent and engaged in deceptive trade practices. The trial court had previously granted Ellis an interlocutory summary judgment on Gibson's negligence and DTPA claims shortly before trial. Gibson never requested the trial court to grant him judgment as a matter of law on his negligence and DTPA claims after his case was tried before a jury. Issues three and four as presented have not been properly preserved for appellate review. *See* Tex.R.App. P. 33.1.

In his fifth issue, Gibson directly attacks the trial court's summary judgment on his DTPA and negligence

claims. After reviewing the summary judgment evidence in the record, we conclude Gibson's argument is meritless. The standards for reviewing summary judgment under rule 166a(c) are well-established. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Because Ellis moved for summary judgment on limitations grounds, he must conclusively prove all the elements of that defense. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). Gibson pleaded the discovery rule and fraudulent concealment to avoid the bar of limitations. Ellis was required to negate the discovery rule by proving as a matter of law when Gibson discovered or should have discovered the nature of his injury. *Gibson v. Ellis,* 58 S.W.3d 818, 824 (Tex.App.-Dallas 2001, no pet.). Gibson, however, had the burden of presenting evidence raising a fact issue on each element of his fraudulent concealment defense in response to Ellis's motion. *Id.*

Ellis's summary judgment evidence included an affidavit by Gibson. In the affidavit, Gibson admitted that as early as January 1995, he began to question whether Ellis's explanation for the deductions made from his 1993 settlement were true. Gibson further states that he received a letter from Ellis dated January 19, 1995, indicating that one of the doctor's bills paid from his settlement was not covered by a letter of protection and the letter of protection for the other bill only applied to Cathy's settlement and not Gibson's. From January 24–27, 1995, Gibson viewed and made copies of Ellis's case file on the Gibsons' personal injury action. Also attached to Ellis's summary judgment motion was a transcription of a March 3, 1995 conversation between Gibson and Ellis.[4] In that conversation, Gibson voiced his conclusion that "my best interest was not represented" with respect to the deductions made from his settlement and also stated he wanted Ellis to return the money to him. In this conversation, Gibson also admits he consulted with an attorney on the matter, and although the attorney refused to represent him, he advised Gibson that what Ellis had done looked like malpractice.

In response to Ellis's motion, Gibson submitted another affidavit stating that based on Ellis's March 3 explanations for the deductions and denial of any wrongdoing, he continued to believe that Ellis did nothing wrong. Gibson further stated it was not until September 1995, after he reviewed case documents and did research at the public library, that he discovered several documents seemed to contradict what Ellis had told him and suggested Ellis's conduct was improper.

Based on the above evidence, we conclude Ellis conclusively established that Gibson knew or should have known the facts establishing the elements of his negligence and DTPA causes of action by March 3, 1995. At that point, Gibson was aware that the deductions were not covered by letters of protection on his settlement. He had copied Ellis's case file and consulted with an attorney who indicated there was potential malpractice. Gibson's affidavit, indicating it was only after he did legal research in September 1995 that he became aware of his cause of action against Ellis, does not create a fact issue with respect to when he discovered the factual basis of his claims.

In reaching this conclusion, we necessarily reject Gibson's argument that Ellis's explanations for the deductions and continuous denial of wrongdoing prevented Gibson from discovering the facts supporting

4. Gibson secretly tape recorded his March 3, 1995 conversation with Ellis.

his causes of action. To the contrary, despite Ellis's alleged assurances that the deductions were proper, Gibson continued to question Ellis, copy Ellis's case file, and consult with an attorney about the deductions. In essence, Gibson argues the limitations period for attorney malpractice does not begin until the attorney admits wrongdoing. That is not the law. Because the summary judgment evidence conclusively established Gibson discovered the factual basis of possible causes of action against Ellis on or before March 3, 1995, his negligence and DTPA claims were barred by limitations as a matter of law, and the trial court correctly granted Ellis's motion for summary judgment on these claims. Accordingly, we resolve Gibson's fifth issue against him.

■■■■ In his sixth issue, Gibson challenges the trial court's denial of his motions for continuance. We review a trial court's ruling on a motion for continuance for an abuse of discretion. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). Gibson's first motion for continuance was filed on April 25, 2002, six days after the discovery deadline and about one month before the scheduled trial date. In the motion, Gibson, representing himself, requested a sixty-day continuance asserting he had found a lawyer willing to represent him, but the attorney had a full schedule for May. Other than presenting a list of sixteen attorneys from whom Gibson claimed to have sought representation, the motion provided no indication with respect to why or how long he had been without counsel in the case. At the time of Gibson's first motion for continuance, the case had been pending since July 1997. After the first appeal, we returned the matter to the trial court in January 2002. Based on the information before it, the trial court did not abuse its discretion in denying Gibson's first motion for continuance.

■■■■ On the day of the scheduled trial date, Gibson's new attorney filed a second motion requesting a sixty-day continuance. In support of the motion, counsel indicated he needed additional time to prepare for trial and to prepare a defense to Ellis's amended counterclaim that reasserted sanction claims and added libel and slander claims.[5] The attorney claimed Ellis's last-minute motion for summary judgment created an additional unfair burden upon Gibson's ability to address Ellis's counterclaim.

We first note that because the libel and slander claims were later abandoned by Ellis, Gibson cannot show reversible error with respect to those claims. Moreover, although the amended counterclaim was filed over one month before trial and after Gibson had consulted with his new counsel, no attempt was made before the day of trial to request additional discovery or other relief on the counterclaims asserted. In fact, the motion contained no details on what discovery Gibson required or other course he would pursue if the continuance were granted. There is nothing in the record to indicate to us the trial court abused its discretion in denying the motion for continuance. *See State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988). We resolve Gibson's sixth issue against him.

■■■■ In his issues seven through ten, Gibson challenges the trial court's evidentiary rulings with respect to excluded testimony from Gibson's legal expert and also Cathy. The admission or exclusion of evidence rests within the sound discretion of the trial court. *K–Mart Corp. v. Ho-*

---

**5.** Ellis originally filed claims for sanctions in July 1998, but later dismissed them without prejudice to enable the appeal of the trial court's first summary judgment.

*neycutt*, 24 S.W.3d 357, 360 (Tex.2000) (per curiam). We will not disturb the trial court's ruling absent an abuse of discretion. *Id.* To reverse an erroneous evidentiary ruling, Gibson must not only establish error but also show the error was reasonably calculated to cause and probably did cause the rendition of an improper verdict. TEX.R.APP. P. 44.1; *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex.1992). Before harm may be established, however, the entire record must be examined to determine whether any excluded evidence was controlling on a material issue and not cumulative of other evidence. *See Williams Distrib. Co., v. Franklin*, 898 S.W.2d 816, 817 (Tex.1995).

■ In issues seven and eight, Gibson generally asserts the trial court erred in excluding the testimony of his legal expert. Gibson claims the trial court excluded the expert testimony because the expert relied on various state bar disciplinary rules to opine that Ellis's conduct constituted a breach of his fiduciary duties to Gibson. In particular, Gibson complains about the exclusion of specific expert testimony to the effect that Ellis violated state bar disciplinary rule 1.14 because of an agreement Ellis claimed to have with Gibson to delay payment of Cathy's doctors' bills until Gibson's settlement.

Even if we assume exclusion of this evidence was error, we fail to see how its exclusion was calculated to cause and probably did cause rendition of an improper verdict. Gibson argues the exclusion of the alleged rule 1.14 violation precluded him from establishing "... if Ellis thought it was proper to make such a deal with Gibson, then he is clueless as to what his ethical obligations are with respect to handling other people's money, thus calling his character defense into serious question." At trial, Gibson denied the existence of any such agreement with Ellis. Therefore, the propriety of such an agreement was not a material part of his breach of fiduciary duty or fraud claim. Moreover, even if such an agreement violated a disciplinary rule, Gibson has failed to show how this evidence was controlling or that its exclusion probably lead to an improper verdict. The omitted evidence at best would be some evidence that Ellis's alleged conduct fell below the articulated professional standard. Gibson has thus failed to establish reversible error with respect to the claimed trial court errors described in issues seven and eight.

■ The ninth issue Gibson presents also relates to the trial court's exclusion of his expert's testimony. Gibson contends the trial court was required to permit him to present his offer of proof of the expert testimony in question and answer form. Gibson provides no argument or authority to support his position and does not attempt to show how he was harmed by this alleged error. Consequently, he has waived this issue. *See* TEX.R.APP. P. 33.1. Even absent waiver, however, the record demonstrates the trial court allowed both counsel and the expert witness to detail the proposed testimony. Gibson's argument has no merit. We resolve Gibson's ninth issue against him.

In his tenth issue, Gibson complains about the trial court's refusal to admit evidence that he claims would demonstrate Cathy's bias toward him and impeach her credibility. Specifically, Gibson contends he was precluded from cross-examining Cathy on whether her damaging testimony against him given at trial was in response to Gibson's damaging testimony in a lawsuit Cathy and Gibson had previously filed against their bankruptcy attorney. Gibson also complains he was harmed by the trial court's refusal to allow him to question Cathy about alleged shoplifting convictions. We first address the bias evidence.

In addition to representing Gibson and Cathy in the personal injury action, Ellis also filed a lawsuit on their behalf against the couple's bankruptcy attorney alleging he had made inappropriate sexual advances to Cathy. Gibson personally testified that during his deposition in the case against the bankruptcy attorney, he testified that Cathy had affairs with other men. Ellis testified that he believed such information could have damaged Cathy's case against the bankruptcy attorney. Cathy's possible bias was framed by Gibson's and Ellis's testimony. Therefore, we perceive Cathy's excluded testimony would be cumulative and there was no harm in its exclusion. *See Williams Distrib. Co.*, 898 S.W.2d at 817. In reaching this conclusion, we necessarily reject Gibson's assertion that his testimony on the subject was excluded by the trial court because, according to Gibson, the trial court sustained Ellis's objection to Gibson's testimony. The trial court did not exclude Gibson's testimony. Our review of the record reveals Ellis's objection was limited to a question to Gibson about Ellis's response to Gibson's previous deposition testimony about Cathy's alleged affairs.

Gibson also argues the trial court erred in excluding testimony about the amount of the original demand in the suit against the bankruptcy attorney. He argues such testimony was relevant to the damaging effect of Gibson's deposition testimony. Although Cathy admitted during cross-examination that she had settled the case against the bankruptcy attorney for $30,000 or $31,000, she testified she could not recall what she originally expected to recover in the case. Ellis also did not recall the original demand amount. As noted above, there was other evidence that Gibson's deposition testimony damaged his wife's case against the bankruptcy attorney. Finally, Gibson was permitted to ask Cathy directly whether her testimony in this case was payback for Gibson's damaging testimony in the case against the bankruptcy attorney. We therefore conclude any error in excluding Cathy's testimony on the amount of the demand was harmless. We next turn to Gibson's argument regarding the alleged shoplifting convictions.

During Gibson's cross-examination of Cathy, the trial court sustained Ellis's relevance objections to questions about whether she had ever been convicted of a crime. On appeal, Gibson argues it was harmful error to exclude evidence of Cathy's alleged shoplifting convictions. There is no showing in the record before us that Cathy had shoplifting convictions. Gibson never made an offer of proof on this matter. In fact, it was not until his motion for judgment notwithstanding the verdict and new trial that Gibson presented an affidavit for arrest warrant and a misdemeanor probable cause affidavit to support his contention that Cathy had a shoplifting conviction. Neither of these documents are evidence of such a conviction. Because Gibson presented no evidence of the alleged convictions, he has failed to show that Cathy would have been impeached by the excluded evidence.

Even assuming the trial court's exclusion of the credibility and bias evidence was error, Gibson has still not demonstrated these errors probably caused rendition of an improper judgment. Although Cathy was admittedly a key witness in the case, she was not the only one who testified with respect to the agreement to delay payment of the doctors' bills until Gibson's settlement. Ellis also testified that he took the deductions pursuant to an express agreement with Gibson. Cathy's testimony was merely cumulative of Ellis's testimony on the subject of whether there was an agreement about the dis-

bursements to be taken out of Gibson's settlement. The jury could have believed Ellis, disbelieved Gibson, and arrived at the same verdict even absent Cathy's testimony. Because Gibson has not shown he was harmed by the excluded evidence, we resolve Gibson's tenth issue against him.

In his eleventh issue, Gibson challenges the trial court's finding that his suit was groundless. Gibson's complaint is limited to the imposition of a sanction. He does not challenge the amount of the trial court's sanction award.

After the trial on Ellis's counterclaim, the trial court rendered judgment for $41,000 in attorney's fees for Ellis under section 17.50(c) of the DTPA and rule 13 of the Texas Rules of Civil Procedure. Although Gibson did not request findings of fact and conclusions of law, the trial court stated the following at the conclusion of the trial: "The court finds and concludes that the DTPA action during all of its iterations was groundless in fact and was brought in bad faith and was brought for the purposes of harassment and, under rule 13, finds and concludes that the claims were groundless and brought in bad faith and groundless and brought for the purposes of harassment."

■■■■ We review the trial court's imposition of an available sanction under an abuse of discretion standard. *See Bohls v. Oakes*, 75 S.W.3d 473, 480 (Tex.App.-San Antonio 2002, pet. denied) (DTPA); *McIntyre v. Wilson*, 50 S.W.3d 674, 686 (Tex. App.-Dallas 2001, pet. denied) (rule 13). When reviewing a trial court's findings for an abuse of discretion, we may not substitute our judgment for that of the trial court. *Riddick v. Quail Harbor Condominium Ass'n Inc.*, 7 S.W.3d 663, 678 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Instead, we must determine whether the trial court (1) acted arbitrarily or unreasonably, without reference to guiding

rules or principles, or (2) misapplied the law to the established facts of the case. *Id; see also Elkins v. Stotts–Brown*, 103 S.W.3d 664, 667 (Tex.App.-Dallas 2003, no pet.). Because the trial court did not make findings of fact or conclusions of law, we imply all necessary fact findings that support the judgment and will uphold the judgment on any applicable theory that finds support in the record. *See McCain v. NME Hospitals, Inc.*, 856 S.W.2d 751, 756 (Tex.App.-Dallas 1993, no writ).

■■■■ We first consider whether the court's award was proper pursuant to section 17.50(c) of the DTPA. Section 17.50(c) authorizes a trial court to award reasonable and necessary attorney's fees and court costs to a defendant upon its finding that the plaintiff's claim "was groundless and brought in bad faith, or brought for the purposes of harassment." TEX. BUS. & COM.CODE ANN. § 17.50(c) (Vernon Supp. 2003). Like rule 13, "groundless" under the DTPA has been defined as having "no basis in law or fact and not warranted by good faith argument for extension, modification, or reversal of existing law." *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex.1989). The trial court must consider whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim. *Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex.1989).

■■■■ Gibson's argument that his suit was not groundless consists of four sentences. He first refers us to his previous issues asserting entitlement to judgment as a matter of law on his breach of fiduciary duty claim. He also contends, "There is room for good faith argument on both sides of the issue as to when Gibson learned sufficient facts to end the tolling of limitations." He then cites our opinion reversing the trial court's initial summary

judgment as conclusive evidence that his case was not groundless. We are unpersuaded by Gibson's arguments.

At the trial of Ellis's counterclaim, the trial court took judicial notice of the evidence presented at the jury trial. That evidence included testimony from two witnesses that Gibson had actually requested Ellis to make the settlement deductions of which he complained in this lawsuit. Ellis also testified that Gibson picketed his office about one month before he filed the lawsuit, circulated a flyer that cautioned the "public beware" of Ellis, left a greeting on his home telephone answering machine containing negative statements about Ellis, and filed four unsuccessful grievances against Ellis with the State Bar of Texas. The trial court could have found that although Gibson actually requested Ellis to deduct the doctors' bills from the proceeds of his settlement, he later changed his mind about paying these bills. After his picketing, flyers and other efforts did not persuade Ellis to reimburse him for the bills, Gibson filed this lawsuit knowing that he had actually requested Ellis to pay the bills out of his settlement proceeds. Based on the record before us, we cannot conclude the trial court abused its discretion in finding Gibson's DTPA action was groundless and brought in bad faith. Having determined the trial court's sanction award is sustainable under section 17.50(c) of the DTPA, we need not address Gibson's additional arguments with respect to rule 13.[6]

We affirm the trial court's judgment.

---

6. Nor is it necessary for us to decide any issue relating to whether a counterclaim, as contrasted to a motion, can be the proper vehicle to assert a violation of rule 13 of the Texas Rules of Civil Procedure.