**McGUIRE, CRADDOCK, STROTHER & HALE, P.C., Appellant**

**v.**

**TRANSCONTINENTAL REALTY INVESTORS, INC., and RT Realty, L.P., Appellees.**

No. 05–07–00050–CV.

Court of Appeals of Texas, Dallas.

April 8, 2008.

Wade C. Crosnoe, Austin, Alison H. Moore Esq., Thomas A. Culpepper, Thompson, Coe, Cousins & Irons, L.L.P., Dallas TX, for Appellant.

Lawrence J. Friedman, Friedman & Feiger, L.L.P., Lance Eric Caughfield, Fletcher & Springer, L.L.P., Dallas TX, for Appellee.

Before Justices MORRIS, WRIGHT, and MOSELEY.

## OPINION

Opinion by Justice WRIGHT.

Following a jury verdict in favor of McGuire, Craddock, Strother & Hale, P.C. (McGuire, Craddock) in its lawsuit to collect attorney's fees, the trial court entered a judgment notwithstanding the verdict. In three issues, McGuire, Craddock contends: (1) the trial court erred in granting judgment notwithstanding the verdict because there is legally sufficient evidence to support the jury's finding that it did not breach any fiduciary duty; (2) even if Transcontinental Realty Investors, Inc. (TRI) and RT Realty, L.P. established that McGuire, Craddock breached its fiduciary duty, it could still recover on its claims; and (3) the trial court erred in ordering forfeiture of all of McGuire, Craddock's unpaid fees and expenses. In three cross-points, RT Realty and TRI contend there is no evidence to support the jury's findings of breach of contract, damages, and fraud. Because we conclude the evidence is legally sufficient to support the jury's finding on breach of contract and damages, we overrule the cross-points. We sustain McGuire, Craddock's first issue, reverse the trial court's judgment, render judgment on the jury verdict, and remand this cause to the trial court to address attorney's fees incurred in prosecuting the lawsuit and the appeal.

## Background

RT Realty, L.P. owned the Republic Towers, a group of office buildings located in Dallas. In May 1995, floods occurred that caused water and fire damage to Republic Towers. RT Realty has no employees and is owned by a single general partner, TRI. Basic Capital Management, Inc. (Basic Capital) provides all the employees and supervises all the work for RT Realty and TRI.

Attorneys for Basic Capital recommended McGuire, Craddock to represent RT Realty on its claims against its insurer, Aetna, for the damage to the Republic Towers. McGuire, Craddock's representation of RT Realty resulted in a $17.1 million payment from the insurer.

In 1996, Steve Reynolds of Basic Capital informed Tom Craddock that RT Realty wanted to assert claims against the parties responsible for the losses at the Republic Towers. Craddock agreed to represent RT Realty on the same fee terms as with the insurance representation. McGuire, Craddock subsequently filed the lawsuit against Dallas Area Rapid Transit, Gilbert Texas Construction Corp., and Texas Utilities Electric Company.

Ken Nye joined Basic Capital as vice president and assistant general counsel in July 1997. He was responsible for monitoring all of its outside litigation. At a meeting in September 1997, Nye asked Craddock to prepare a litigation budget for the DART litigation. Craddock prepared a budget projecting an additional $530,000 to $650,000 to take the case through trial.

Craddock sent a status report to Nye in January 1999. In that report, Craddock stated that he was pleased with the progress and efficiency of the case. Subsequently, the DART litigation intensified and became very contentious. In November 1999, Basic Capital ceased paying McGuire, Craddock's monthly bills. At a premediation meeting in December 1999, Nye viewed the mediation presentation prepared by McGuire, Craddock. Nye saw that McGuire, Craddock was asking for $1,250,000 in attorney's fees. It was around this time that Nye discovered that McGuire, Craddock had exceeded the litigation budget. At a meeting to discuss the budget concerns, Craddock informed Nye that it would take an additional $800,000 to $1,250,000 to finish the litigation. The parties tried unsuccessfully to work out a payment plan for the attorney's

fees. On April 27, 2000, RT Realty and TRI terminated McGuire, Craddock.

McGuire, Craddock sued for its attorney's fees alleging claims for breach of the fee agreement and fraudulent inducement. RT Realty and TRI counterclaimed for breach of contract, fraud, breach of fiduciary duty, negligence, and negligent misrepresentation.

The jury found in favor of McGuire, Craddock on both its breach of contract and fraudulent inducement claims, against RT Realty and TRI on their counterclaims, and awarded $298,630 in damages. RT Realty and TRI filed a motion for judgment notwithstanding the verdict alleging that it proved breach of fiduciary duty as a matter of law. They also sought the equitable remedy of fee forfeiture. The trial court conducted a hearing on the motion. Subsequently, the trial court rendered its judgment granting the motion for JNOV and ordered that both parties take nothing. This appeal timely followed.

## Standard of Review

In reviewing rulings on motions for directed verdicts and judgment notwithstanding the verdict, appellate courts apply the no-evidence standard. See *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005); *Byrd v. Delasancha*, 195 S.W.3d 834, 836 (Tex.App.-Dallas 2006, no pet.); *Steinberg v. Comm'n for Lawyer Discipline*, 180 S.W.3d 352, 355 (Tex.App.-Dallas 2005, no pet.). The court reviews the evidence and must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *Wilson*, 168 S.W.3d at 827. A challenge to the legal sufficiency of evidence will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex.2006). Evidence does not exceed a scintilla if it is

"so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). When a party moves for JNOV on multiple grounds and the trial court grants JNOV without specifying which ground it found decisive, the appellant must show that JNOV was not proper on any of the asserted grounds. *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991).

## Fiduciary Duty

In its first issue, McGuire, Craddock contends the trial court erred in granting the judgment notwithstanding the verdict because the evidence is legally sufficient to support the jury's finding that McGuire, Craddock complied with its fiduciary duty to RT Realty and TRI. We agree.

An attorney owes a fiduciary duty to his client. *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988). The essence of a claim for breach of fiduciary duty focuses on whether an attorney obtained an improper benefit from representing the client. *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex.App.-Dallas 2004, no pet.). An attorney breaches his fiduciary duty to a client when he, among other things, subordinates his client's interest to his own, engages in self-dealing, fails to disclose conflicts of interest, or makes misrepresentations to achieve these ends. *Id.*

In their motion for JNOV, RT Realty and TRI asserted that they conclusively proved the following five breaches of fiduciary duty: (1) the parties' fee agreement was not fair and reasonable; (2) McGuire, Craddock did not strictly follow their billing instructions; (3) McGuire, Craddock did not inform them that it billed in fifteen minute increments; (4) McGuire, Craddock did not advise them when it raised

hourly rates; and (5) McGuire, Craddock failed to manage the underlying litigation within the proposed litigation budget or update the proposed budget. McGuire, Craddock argues that there is more than a scintilla of evidence to support the jury's finding that it did not breach its fiduciary duty with respect to each of these alleged acts. Thus, McGuire, Craddock argues the trial court erred in granting the JNOV. We agree.

**1. The Fee Agreement and Billing Method**

■ TRI asserted in its JNOV motion that McGuire, Craddock breached its fiduciary duty as a matter of law because the fee agreement was unreasonable and the billing methods did not comply with the agreement. Whether a fee agreement is fair and reasonable is judged at the time the parties enter into the agreement. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964); *Miller v. Kennedy & Minshew, P.C.*, 142 S.W.3d 325, 336–37 (Tex. App.-Fort Worth 2003, pet. denied).

■ RT Realty and TRI contend that the agreement was unreasonable because Craddock failed to recognize that the parties also agreed that McGuire, Craddock would not exceed the litigation budget. They rely upon a statement from Gene Phillips, advisor to the management of Basic Capital, that McGuire, Craddock agreed that the fees charged would not exceed the limits of the litigation budget. Phillips's testimony, however, is not relevant to the reasonableness of the fee agreement because the budget was requested and prepared over nine months after the parties entered into the fee agreement. *See Archer*, 390 S.W.2d at 740; *Miller*, 142 S.W.3d at 336–37.

In June 1995, McGuire, Craddock and Basic Capital entered into a written engagement agreement with respect to the Aetna matter. Pursuant to that agreement, McGuire, Craddock was to provide a description of the service performed, the name of the person performing the service, the hourly rate charged for the service, and the number of hours billed for the service. In a separate letter, McGuire, Craddock set forth the hourly rates of its attorneys. Subsequently, McGuire, Craddock submitted monthly bills and Basic Capital paid them. These bills did not list the attorney's hourly rates and contained some block billing as opposed to itemized billing. Basic Capital never complained about the format of the bills.

In 1996, McGuire, Craddock agreed to represent RT Realty in its lawsuit against DART. McGuire, Craddock and Basic Capital orally agreed that McGuire, Craddock would continue to bill as it had in the Aetna matter. McGuire, Craddock informed Basic Capital of the attorney's hourly rates prior to the DART litigation. For purposes of the DART litigation, McGuire, Craddock continued to submit bills in the same format as it had for the Aetna matter. Until October 1999, Basic Capital continued to pay them in a timely manner.

Nye testified that he would have contacted McGuire, Craddock if he had a problem with one of its bills. Basic Capital was aware that McGuire, Craddock billed in fifteen minute increments. Before the DART representation began, Basic Capital received bills from McGuire, Craddock reflecting fifteen minute increment billing. An expert witness for RT Realty and TRI, Michael Betz, testified that billing in quarter hour increments was typical. Jim Flegle, an expert witness for McGuire, Craddock, also testified that an attorney does not breach his fiduciary duty by billing in .25 time increments.

■ RT Realty and TRI also contend that McGuire, Craddock breached its fiduciary duty when it raised its hourly rates without notice. McGuire, Craddock's bills

did not set forth the hourly rate for each timekeeper. Thus, it was not possible to tell from the bills when rates had been raised. To support its contention that failure to provide written notice of rate increases constituted a breach of fiduciary duty, RT Realty and TRI rely upon comment 2 to rule 1.04 of the Texas Rules of Professional Conduct. That comment states that if the rate being charged a "client differs from the understanding that has evolved, the lawyer should so advise the client." TEX. DISCIPLINARY R. PROF'L CONDUCT § 1.04, cmt. 2. However, the preamble to the State Bar Rules states:

> These rules do not undertake to define standards of civil liability of lawyers for professional conduct. Violation of the Texas Disciplinary Rules of Professional Conduct does not give rise to a private cause of action nor does it create any presumption that a legal duty to a client has been breached.... Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

TEX. DISCIPLINARY R. PROF'L CONDUCT preamble ¶ 15. A claim that a lawyer has violated a rule of professional conduct should be raised in a disciplinary proceeding. The disciplinary rules set forth the proper conduct of lawyers "solely for the purpose of discipline within the profession." 1 J. Hadley Edgar, Jr. & James B. Sales, Texas Torts and Remedies § 12.02[1][a][ii][A] (2000). A private cause of action does not exist for violation of the disciplinary rules. *Id.; Jones v. Blume*, 196 S.W.3d 440, 449 (Tex.App.-Dallas 2006, pet. denied).

Moreover, the evidence at trial shows that Craddock informed Alan Goodrich, associate general counsel for Basic Capital, that the firm periodically raised its rates. Goodrich indicated to Craddock that he understood that firms periodically raise their rates. Flegle testified that an attorney complies with its duty of full disclosure when he raises his rates after notifying the client verbally.

In light of the conflicting evidence with regard to the parties' fee agreement and McGuire, Craddock's billing methods, we conclude the trial court erred in concluding that such practices amounted to a breach of fiduciary duty as a matter of law. Accordingly, the trial court erred in granting JNOV on this ground.

## 2. Litigation Budget

██ RT Realty and TRI also contend that McGuire, Craddock breached its fiduciary duty by submitting a lowball budget and then exceeding it without notice.

In a letter dated July 8, 1997, Goodrich informed Craddock that effective July 15, 1997, Nye would be responsible for monitoring all outside litigation for Basic Capital. Subsequently, Nye asked Craddock to prepare a litigation budget. In a letter dated September 18, 1997, Craddock set forth a proposed litigation budget. In that letter, Craddock emphasized the difficulty of forecasting "legal expenses with any degree of accuracy, and it is quite possible that legal fees could be substantially more or less than this estimate." Craddock also stated that the "budget projection does not represent any form of guarantee or assurance of a maximum fee or that the legal fees will not exceed the projected amounts, nor does it represent a guarantee or assurance of any particular outcome."

At the time he prepared the budget, Craddock testified that he thought four of the seven construction defendants would settle based on what their attorneys had stated. He also thought that TU Electric was interested in working out an arrangement. Craddock testified that his firm's fees exceeded the budget because the case progressed in a much more difficult and contested manner than anticipated.

An attorney testifying as an expert for RT Realty and TRI, Michael Quinn, testified that McGuire, Craddock breached its fiduciary duty by failing to inform the clients when they were approaching the limits of the budget. Craddock, however, disputed this testimony. Craddock did not believe that he had an obligation to stay within the proposed budget because RT Realty and TRI were receiving status reports and monthly statements. He also stated that Basic Capital did not instruct him to stay within the budget. RT Realty and TRI knew where the litigation was at all times. Craddock testified that he did not believe he had a fiduciary duty to inform the clients that it was approaching the limits of the proposed budget because he was never instructed by them to manage the litigation within the budget.

Nye testified that his job was to oversee and manage the outside litigation of Basic Capital. He expected McGuire, Craddock to handle the litigation within the proposed budget and understood that Craddock agreed to the same. Nye also expected Craddock to inform him when McGuire, Craddock approached the limits of the budget. Nye testified that he provided updates to Phillips on the cost of the litigation. Nye did state that it was his job to make sure that McGuire, Craddock was staying within the budget.

Phillips testified that he asked Craddock for an accurate estimate, told him that Basic Capital would use the estimate in choosing a firm to handle the DART litigation, and relied on the budget prepared by Craddock. The budget, however, was not requested until approximately nine months after McGuire, Craddock began working on the DART litigation. Phillips *thought* McGuire, Craddock agreed that it would not exceed the litigation budget without first obtaining his consent. Although Phillips did not review McGuire, Craddock's bills, he did receive updates on the litigation.

We conclude the trial court erred in granting the judgment notwithstanding the verdict because there is sufficient evidence to support the jury's finding that McGuire, Craddock did not breach any fiduciary duty owed to RT Realty and TRI. Accordingly, we sustain McGuire, Craddock's first issue.[1]

Finally, RT Realty and TRI argue in the alternative that the trial court's fee forfeiture is valid even if this Court determines that sufficient evidence supports the jury's finding that McGuire, Craddock did not breach any fiduciary duty. They contend that a breach of any duty will support a fee forfeiture. We disagree.

 Before a trial court may order fee forfeiture, there must be a finding of a breach of fiduciary duty. *Burrow v. Arce,* 997 S.W.2d 229, 234 (Tex.1999); *Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 23 (Tex.App.-Tyler 2000, pet. denied). The issue in *Burrow* was whether an attorney who breached his fiduciary duty to his client may be required to forfeit all or part of his fee regardless of whether the breach caused his client any actual damages. *Burrow,* 997 S.W.2d at 232. The Court held that a client does not have to prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty. *Id.* at 240. We have determined that evidence supports the jury's finding that McGuire, Craddock did not breach any fiduciary duty. In light of Texas supreme court authority, RT Realty and TRI's contention that it is entitled

---

1. In light of this Court's resolution of McGuire, Craddock's first issue, we do not address its second and third issues contending that it is entitled to recover even if the Court were to determine that a breach of fiduciary duty occurred and that the trial court erred in ordering fee forfeiture.

to fee forfeiture because McGuire, Craddock breached several of the Texas Rules of Professional Responsibility is without merit. *See Burrow*, 997 S.W.2d at 234.

### Cross–Points

By way of three cross-points, RT Realty and TRI contend: (1) the award of attorney's fees was not reasonable and necessary; (2) the evidence is legally insufficient to support the finding of breach of contract; and (3) the evidence is legally insufficient to support the fraud finding.

■■■ Two experts, Flegle and Weldon Moore, testified as to the reasonableness of McGuire, Craddock's attorney's fees. RT Realty and TRI argue on appeal that the opinions of Flegle and Moore do not constitute any evidence because their opinions lacked foundation. However, they did not raise this objection at trial. Accordingly, they have waived this complaint. *See Coastal Transport Co. v. Crown Central Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex.2004) (when foundational data used by expert questioned, objection must be made so trial court can conduct analysis).

■■■ Factors to consider in determining the reasonableness of attorney's fees include: (1) the time and labor required and difficulty of the issues involved; (2) the likelihood that acceptance of the employment will preclude other employment by the lawyer; (3) the fees customarily charged in the locality for similar legal services; (4) the amount involved and results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent on the result obtained. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997). Flegle and Moore evaluated the reasonableness and necessity of McGuire, Craddock's attorney's fees in light of the *Arthur Andersen* factors. Flegle testified that the DART litigation was very complex and labor intensive. McGuire, Craddock's hourly rates were below market. Craddock was an experienced commercial litigator with a very good reputation. Nye also testified that Craddock had a very good reputation as a litigator. Craddock had to turn down other work because of the DART litigation. Flegle testified that McGuire, Craddock's fees were reasonable and necessary and that its billing method was appropriate. Basic Capital instructed McGuire, Craddock to litigate the DART case aggressively. The work McGuire, Craddock put into the DART litigation helped to obtain a positive settlement for RT Realty and TRI. Ultimately, the plaintiffs and intervenors in the DART litigation recovered $17 million, with $4.25 million going to RT Realty and TRI. McGuire, Craddock's work was very thorough. Moore also testified that McGuire, Craddock's attorney's fees were necessary and reasonable.

Although RT Realty and TRI presented their own expert who testified that McGuire, Craddock's fees were not necessary and reasonable, the testimony of Flegle and Moore constituted more than a scintilla of evidence that the fees were reasonable and necessary. Thus, we overrule their first cross-point.

In their second cross-point, RT Realty and TRI contend there is no evidence to support the jury's breach of contract finding. We disagree.

■■ The evidence at trial showed that the parties agreed that McGuire, Craddock would represent RT Realty in the DART litigation and that the parties would continue to submit invoices and make payments as they had been doing with respect to the Aetna matter. Basic Capital failed to pay the invoices for work performed

from October 1999 through July 2000. The amount billed for but not paid was $298,630. This evidence alone is sufficient to support the breach of contract finding. Accordingly, we overrule RT Realty and TRI's second cross-point.[2]

### Conclusion

We reverse the trial court's judgment, render judgment on the jury verdict, and remand this cause to the trial court to address attorney's fees incurred in prosecuting the lawsuit and the appeal.

---

2. The jury awarded the same amount of damages for the breach of contract and the fraud claims. Because we have upheld the jury's breach of contract and damages for that breach, it is not necessary to address TRI's third cross-point with respect to the fraud claim.