

# NUMBER 13-15-00205-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOEL FLORES, INDIVIDUALLY
AND IN A REPRESENTATIVE
CAPACITY, AND CRISELDA FLORES,
INDIVIDUALLY AND IN A
REPRESENTATIVE CAPACITY,                                    Appellants,

v.

GONZALEZ AND ASSOCIATES
LAW FIRM, LTD.,                                              Appellee.

On appeal from the 105th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION
**Before Justices Benavides, Perkes, and Longoria**
**Memorandum Opinion by Justice Perkes**

Appellants Joel Flores and Criselda Flores, individually and in a representative

capacity, (the Flores Family) filed suit against appellee Gonzalez and Associates Law

Firm, Ltd. (Gonzalez) asserting causes of action for breach of fiduciary duty, common law fraud, and fraud by non-disclosure. Gonzalez filed a cross-claim alleging causes of action for breach of contract and seeking a declaratory judgment.

The trial court granted Gonzalez's motion for summary judgment and dismissed the Flores Family's claims.[1] The case proceeded to a bench trial on Gonzalez's claims. The trial court entered judgment in favor of Gonzalez and awarded contract damages, attorney's fees, and prejudgment interest. By three issues, the Flores Family argues: (1) genuine issues of material fact exist regarding the elements of their breach of fiduciary duty claim; (2) the trial court abused its discretion by excluding evidence that the Flores Family discharged Gonzalez from a legal services contract for cause; and (3) the trial court's award of unsegregated attorney's fees was an abuse of discretion and was not supported by legally sufficient evidence. We affirm.

## I. BACKGROUND

### A. Gonzalez Representation

On July 18, 2013, the Flores Family's four-year-old son drowned in a swimming pool at the McAllen Country Club (MCC) while attending a summer camp program. Nereida Lopez-Singleterry, an attorney and a friend of the family, discussed the Flores Family's potential legal claim with MCC's counsel, John Griffith. According to Lopez-Singleterry, Griffith told her that there was no reason for the Flores Family to retain an attorney "since a simple phone call by them would be enough to collect [insurance] policy

---

[1] The Flores Family's appeal concerns only the dismissal of their breach of fiduciary duty claim.

limits." Lopez-Singleterry referred the Flores Family to attorney Jaime Gonzalez with the Gonzalez and Associates Law Firm.

On or about July 25, 2013, the Flores Family, accompanied by Lopez-Singleterry, met with Gonzalez at his law office. After discussing Griffith's oral comments, Gonzalez recommended that Lopez-Singleterry send a letter to Griffith to verify that MCC was willing to pay the limits on its insurance policy. Gonzalez assisted in drafting the letter which Lopez-Singleterry signed and delivered under her name. In the letter, Lopez-Singleterry asked Griffith to confirm the number of policies in place, the amount of coverage for each policy, and that all polices were being offered for full and final settlement. Griffith's written response, dated July 26, 2013, provided as follows:

> I guess your letter dated July 25, 2013 further shows that no good deed goes unpunished. I had merely called you so that you could tell Ms. Flores that it was my prediction that the insurance companies for McAllen Country Club would attempt to settle this case quickly. I pointed out that, in that case, she may want to stop and think before she signs a 40% contingency fee contract. I even suggested that she negotiate a 10% fee if the case settles in 6 months or less as I anticipated it would. Never once did I discuss the payment of policy limits one way or the other nor did I say that a simple call by them would be enough to collect policy limits. And clearly I never made any offers to settle whatsoever as I never had any authority to do so. Your conscious misstating and overstating of my communications to you is completely improper, especially given that my heartfelt discussion with you was done only to assist Ms. Flores.

> I am still working hard on orchestrating an early resolution of this case to benefit Ms. Flores. In the meantime, she is free to hire any attorney she chooses and to sign up for any contingency fee she chooses. Clearly our investigation into this case is in a very preliminary stage. In the meantime, I am doing my best to get all the information to the insurance company and my client so that they can properly evaluate their positions.

> If you should have any questions or comments, please do not hesitate to contact me.

3

Lopez-Singleterry forwarded the letter by e-mail to Criselda on July 29, 2013. Gonzalez also reviewed Griffith's response and advised the Flores Family that they would need to file a lawsuit if they wanted to recover from MCC. The parties later entered into a contract for legal services. Pursuant to the contract, Gonzalez agreed to investigate and prosecute claims against MCC. In return, Gonzalez would receive a 25% contingent fee if the case settled within sixty days and a 31% contingent fee if the case was settled after sixty days. The contract also provided that Gonzalez would receive no fee if the case settled prior to August 1, 2013.

Gonzalez filed a lawsuit against MCC on August 5, 2013. Later, Gonzalez informed the Flores Family that MCC was covered by two applicable insurance policies which provided a total of $6 million in coverage. The Flores Family agreed with Gonzalez's suggestion to send MCC a formal settlement demand requesting $8.5 million in damages. On December 19, 2013, Gonzalez called Criselda and informed her that MCC offered to settle the case for $6 million with an additional $250,000 to be distributed either to a non-profit established in her son's honor or another charity of the Flores Family's choosing. Later that day, Gonzalez went to the Flores Family's home and advised them to accept the settlement offer. The Flores Family agreed, and, on December 26, 2013, the parties executed a Rule 11 settlement agreement[2] which provided as follows:

---

[2] Rule 11 of the Texas Rules of Civil Procedure states that "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11.

4

(1) "[MCC] will contribute $250,000.00 to a non-profit foundation set up to honor [their son] or to any other charitable cause as directed by the Flores [F]amily."

(2) "[MCC is] authorized to extend policy limits of $6 million which [the Flores Family] agree[s] to accept."

(3) Implementation of recommendations by pool safety experts;

(4) A formal apology to the Flores Family from the MCC board of directors and staff; and

(5) A forgiveness ceremony at St. Frances Xavier Cabrini Catholic Church to be held that same day.

## B. Discharge of Gonzalez and Ensuing Litigation

On May 9, 2014, prior to the execution of a formal settlement agreement and release, the Flores Family informed Gonzalez that they were discharging him as their attorney. In a letter to Gonzalez, the Flores Family explained that "[f]or the reasons discussed earlier today the trust that we once had for you no longer exists." Gonzalez then filed a plea in intervention seeking to enforce the legal services contract.

On June 4, 2014, the Flores Family, now represented by new counsel, filed a third amended original petition reasserting all claims as against MCC. In addition, the Flores Family pleaded causes of action against Gonzalez for breach of fiduciary duty, fraud, and fraud by non-disclosure. The Flores Family sought disgorgement of Gonzalez's fee and rescission of the Rule 11 settlement agreement. MCC filed an amended pleading alleging breach of contract against the Flores Family and seeking enforcement of the Rule 11 settlement agreement. Gonzalez later filed a second amended petition in intervention asserting claims for declaratory judgment and breach of the legal services contract.

5

Gonzalez filed a traditional and no-evidence motion for summary judgment seeking dismissal of the Flores Family's claims for breach of fiduciary duty, fraud, and fraud by non-disclosure. Gonzalez also filed a supplement to the motion for summary judgment. The motion and supplement were supported by Gonzalez's affidavit, the contract for legal services, the Rule 11 settlement agreement, and Criselda's deposition testimony with attached exhibits. With respect to the breach of fiduciary duty claim, Gonzalez's motion asserted that the Flores Family could not produce any evidence that Gonzalez breached his fiduciary duty or that any alleged breach resulted in any injury to the Flores Family or a benefit to Gonzalez. Gonzalez also argued that the summary judgment evidence showed that Gonzalez did not breach his fiduciary duty as a matter of law.

The Flores Family filed a response supported by Criselda's affidavit and attached exhibits, Gonzalez's deposition testimony, and Gonzalez's responses to interrogatories. The Flores Family's response also cited Criselda's deposition testimony which was filed in support of Gonzalez's motion for summary judgment. In their response, the Flores Family maintained that the summary judgment evidence created a genuine issue of material fact regarding those elements challenged in Gonzalez's motion. Most specifically, the Flores Family argued the summary judgment evidence established the following: (1) Gonzalez misrepresented and failed to disclose the entirety of the Griffith letter; (2) Gonzalez failed to disclose that his wife was a member and shareholder of MCC; (3) Gonzalez failed to disclose his wife's ownership interest in a company that provided services in support of the litigation; (4) Gonzalez failed to recover their son's belongings from MCC; (5) Gonzalez misrepresented MCC's net worth; and (6) Gonzalez

6

verbally agreed to accept a 25% contingency fee but was seeking the full 31% fee provided for in the legal services contract through his pleadings. The Flores Family further argued that they were not required to prove injury to prevail on their breach of fiduciary duty claim.

While Gonzalez's motion for summary judgment was pending, the Flores Family accepted the Rule 11 settlement agreement, thereby resolving all claims involving MCC. The trial court later granted Gonzalez's motion for summary judgment, dismissing all of the Flores Family's affirmative claims.

## C.    Gonzalez's Breach of Contract Claim Proceeds to Trial

Following the dismissal of their affirmative claims for relief, and two months after the pleading deadline, the Flores Family filed a motion for leave to file a sixth amended petition seeking to add a claim for breach of contract. Specifically, the Flores Family's petition alleged that the legal services contract was orally modified to provide for a 25% contingent fee, and that Gonzalez breached the agreement by seeking a 31% contingent fee. The petition also alleged that the Flores Family "agree[s] to tender 25% of the insurance proceeds (excluding the payment to the non-profit) and the reimbursable expenses." The trial court denied the motion for leave.

In January of 2015, the trial court entered a second amended docket control order that extended the pleading deadline. The Flores Family subsequently filed a supplemental answer and counterclaim again alleging a breach of contract claim. In the pleading, the Flores Family also raised an affirmative defense to Gonzalez's breach of contract claim alleging they discharged Gonzalez for cause. During a pretrial hearing,

7

the trial court stated that the deadline extension was unintended. The trial court later entered a corrected second amended docket control order that superseded its prior order and which did not provide for an extended pleading deadline. The Flores Family thereafter filed a motion for leave to file a supplemental answer and counterclaim which the trial court denied.

At a pretrial hearing, the following exchange took place concerning the scope of the upcoming trial:

| | |
|---|---|
| [Gonzalez's attorney]: | But I don't think it is a defense but the court has ruled on all the alleged misrepresentations of—of whatever nature. In fact, they're listed in—in this motion. I asked that Ms. Flores and Mr. Flores list them all. And that was the subject of the court's ruling. |
| [The Flores Family's attorney]: | And—those are the ones—the ones that are listed, we agreed with. We are not going to get into those at trial. |
| [Trial Court]: | Okay. Now—now I'm not sure I'm following you. |
| [The Flores Family's attorney]: | The—seven—the seven that they've listed, those factual allegations. |
| [Trial Court]: | Okay. You—you're agreeing that you're not going to get into those? |
| [The Flores Family's attorney]: | Correct, Mr.— |
| [Trial Court]: | Okay. Then that moots this one. Okay. That's already taken care of then. Let's move on |

Thereafter, the trial court granted Gonzalez's motion to exclude evidence regarding whether the Flores Family discharged Gonzalez for cause. The case

8

proceeded to a bench trial on Gonzalez's breach of contract claim, during which the Flores Family submitted an offer of proof concerning the reasons why they discharged Gonzalez. The trial court entered a final judgment in favor of Gonzalez and ordered the Flores Family to pay damages of $1,951,829.30 and prejudgment interest of $82,082.59. The trial court also awarded Gonzalez attorney's fees of $490,260.67 and contingent appellate attorney's fees. This appeal followed.

## II. SUMMARY JUDGMENT

By their first issue, the Flores Family argues that "[Gonzalez] breached its fiduciary duty by failing to treat [the Flores Family] with the 'absolute and perfect candor' it owed them as a matter of law." Specifically, the Flores Family maintains that the trial court erred in granting summary judgment because there are genuine issues of material fact regarding the elements of their breach of fiduciary claim.

### A.    Standard of Review

We review a trial court's summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002). The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *Mann Frankfort*, 289 S.W.3d

9

at 848; *see* Tᴇx. R. Cɪᴠ. P. 166a(c). A defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). If the movant demonstrates it is entitled to judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact as to the movant's summary-judgment grounds. *Ayeni v. State*, 440 S.W.3d 707, 709 (Tex. App.—Austin 2013, no pet.).

A no-evidence summary judgment motion is essentially a motion for a pretrial directed verdict. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (citing Tᴇx. R. Cɪᴠ. P. 166a(i)); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). A party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential element of the non-movant's claim or defense. Tᴇx. R. Cɪᴠ. P. 166a(i). The trial court must grant the motion unless the non-movant produces summary judgment evidence that raises a genuine issue of material fact. *Timpte Indus., Inc.*, 286 S.W.3d at 310.

Unless the grounds for granting the summary judgment are specified, a summary judgment order must be affirmed if any of the summary judgment grounds are meritorious. *FM Prop's Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## B.    Breach of Fiduciary Duty

To prevail on a claim for breach of fiduciary duty, a plaintiff must establish the existence of a fiduciary relationship and a breach of that duty. *See Beck v. Law Offices*

10

*of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.). An attorney owes a fiduciary duty to his client as a matter of law. *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). The essence of a claim for breach of fiduciary duty focuses on whether an attorney obtained an improper benefit from representing the client. *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.). "Breach of fiduciary duty by an attorney most often involves the attorney's failure to disclose conflicts of interest, failure to deliver funds belonging to the client, placing personal interests over the client's interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations." *Id.*

### C.     No Evidence Motion - Analysis

Gonzalez sought summary judgment on the Flores Family's breach of fiduciary duty claim by arguing, in part, that the Flores Family could produce no evidence that Gonzalez breached his fiduciary duty. *See* TEX. R. CIV. P. 166a(i). In response, the Flores Family presented evidence which they claim shows a breach of fiduciary duty. We will address each allegation and the corresponding evidence in turn to determine whether the Flores Family produced evidence that raised a genuine issue of material fact. *See Garcia v. State Farm Lloyds*, 287 S.W.3d 809, 817 (Tex. App.—Corpus Christi 2009, pet. denied) ("When a party moves for summary judgment under both Rules 166a(c) and 166a(i) of the Texas Rules of Civil Procedure, we will first review the trial court's judgment under the standards of Rule 166a(i).").

### 1.   The Griffith Letter

The Flores Family argues in their summary judgment response that Gonzalez failed to disclose the full contents of Griffith's July 26, 2013 letter. Specifically, they assert that Gonzalez did not tell them that Griffith predicted the case would settle quickly or that Griffith suggested a 10% contingent fee if the case was settled within six months.

We conclude that the Flores Family failed to present evidence that Gonzalez breached his fiduciary duty for the following reasons: (1) Criselda testified that Lopez-Singleterry earlier informed her of Griffith's purported representations that the case would settle for policy limits and that the Flores Family would not need to hire an attorney; and (2) Lopez-Singleterry, who was the recipient of the letter, provided a copy of Griffith's July 26, 2013 letter to both Gonzalez and Criselda. Further, we observe no clear misrepresentation with respect to Gonzalez's characterization of the letter. Gonzalez purportedly stated the letter was "rude" and that litigation was required. Such representations constitute his subjective view of the contents of the letter and are consistent with Griffith's representations that he did not have authority to settle the case for policy limits and his statement that Lopez-Singleterry's letter was a "conscious misstating and overstating of [Griffith's earlier] communications[.]"

### 2. Member of MCC

The Flores Family also alleged in their response that Gonzalez failed to disclose that his wife was a member of MCC. An "attorney's failure to disclose conflicts of interest" is one of the circumstances that may give rise to an independent breach of fiduciary duty claim. *Beck*, 284 S.W.3d at 436. But only if the gist of the plaintiff's

12

complaint is that the lawyer obtained an improper benefit by not disclosing the asserted "conflict." *Id.*

We first observe the Flores Family presented no evidence showing Gonzalez obtained any benefit regarding his purported non-disclosure. More importantly, the Flores Family's own summary judgment evidence provides that Gonzalez disclosed a family membership in MCC. The Flores Family cites to Criselda's deposition testimony in which she testified that Gonzalez did not disclose that his wife was a member of MCC. Criselda, however, also testified that she asked Gonzalez on the day she signed the legal services contract if he was a member of MCC, and Gonzalez responded "Oh, yes, Cris, but don't worry about it, I am fearless." We conclude it is not material whether the disclosure related to Gonzalez's own interest or his wife's. Under either scenario, Gonzalez disclosed the potential conflict to the Flores Family.

### 3. Ownership of APT

The Flores Family presented evidence that Gonzalez failed to disclose his wife's ownership of Advanced Presentation Technologies (APT), a company that provided some litigation support services for Gonzalez and was listed on an expense report provided to the Flores Family. The Flores Family maintains that this report constitutes some evidence of "self-dealing" on the part of Gonzalez.

The very same expense report, however, shows that Gonzalez did not charge the Flores Family for any services provided by APT. Because Gonzalez waived the expenses, neither Gonzalez nor his wife received an improper benefit from the use of APT. *See Beck,* 284 S.W.3d at 429 (explaining that Texas courts have generally held

13

that a breach-of-fiduciary-duty claim focuses on whether an attorney obtained an improper benefit from representing the client).   Therefore, we conclude that such evidence does not show Gonzalez engaged in self-dealing or otherwise breached his fiduciary duty.

### 4.   Recovery of Son's Belongings

The Flores Family presented evidence that Criselda requested Gonzalez to recover her son's clothing and art projects from his last day at MCC, and that a representative from Gonzalez's office told Criselda they could not find her son's clothing. Criselda, however, was able to subsequently locate her son's clothing and art projects.

While Gonzalez may have stated he would attempt to accomplish this task, it was not required as a part of his representation of the Flores Family.   Generally, a lawyer's fiduciary duties to a client extend only to dealings within the scope of the underlying relationship of the parties.   *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159 (Tex. 2004) (citing *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex.1977)); *see also Joseph v. State*, 3 S.W.3d 627, 639 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("The nature of the attorney-client relationship defines an attorney's duties and the professional services to be rendered.").   "While it is true that an attorney owes a client a duty to inform the client of matters material to the representation . . . this duty to inform does not extend to matters beyond the scope of the representation."   *Joe*, 145 S.W.3d at 160 (internal citations omitted).   Because this evidence relates to actions that are beyond the scope of the attorney-client relationship, it cannot support a claim for breach of fiduciary duty.

### 5.   Net Worth of MCC

14

The Flores Family contends that Gonzalez represented MCC's net worth as being less than $1 million and that this representation impacted their decision to settle the case for policy limits. The Flores Family's response, however, also included MCC's sworn response to interrogatory requests propounded by Gonzalez in which MCC states that its net worth is $922,721. The Flores Family presented no evidence that Gonzalez possessed any additional information that would lead him to believe that MCC's representation was inaccurate. Therefore, we conclude the Flores Family presented no evidence that Gonzalez misrepresented this fact.

### 6. The Contingency Fee

Finally, the Flores Family argued that Gonzalez misrepresented that he would charge only a 25% contingent fee because he was seeking a 31% contingent fee through his pleadings. The Flores Family's evidence reflects that the parties agreed to a 31% contingent fee as reflected in the legal services contract. After the execution of the legal services contract, the Flores Family first requested Gonzalez to reduce his fee to 25% and then to 10%, before discharging him and seeking to disgorge his entire fee.[3]

The Flores Family cites no authority for the proposition that an attorney breaches his fiduciary duty by seeking to enforce the fee provisions of a legal services contract.

---

[3] Criselda asserted that Gonzalez stated at a December 5, 2013 meeting that he would agree to a 25% contingency fee instead of the 31% fee provided for by the legal services contract. In February of 2014, Gonzalez sent Criselda a draft document titled "Final Accounting and Disbursement Statement" providing for $1,500,000 million in attorney's fees, which constituted 24% of the total $6,250,000 settlement. After executing the Rule 11 settlement agreement, Criselda testified that she requested Gonzalez to reduce his contingency fee to 10%.

We decline to consider any discussions pertaining to the Flores Family's attempt to modify the legal services contract as evidence of a breach of fiduciary duty.[4]

## D. Summary

The Flores Family presented no summary judgment evidence that Gonzalez breached his fiduciary duty. *Gibson*, 126 S.W.3d at 330. Therefore, the trial court did not err in granting summary judgment.[5] *See* TEX. R. CIV. P. 166a(i). We overrule the Flores Family's first issue.

## III. BENCH TRIAL - EVIDENTIARY RULING

By their second issue, the Flores Family argues that "[t]he trial court abused its discretion by excluding evidence [during the bench trial on Gonzalez's breach of contract action] that [the Flores Family] fired [Gonzalez] for cause because that evidence was critically important to the question of whether [the Flores Family] breached the fee agreement."

## A. Standard of Review

---

[4] We also note that "[a] contingent fee contract for legal services must be in writing and signed by the attorney and client." TEX. GOV'T CODE ANN. § 82.065 (West, Westlaw through 2015 R.S.). Section 82.065 can be "sensibly construed to operate in a manner similar to the statute of frauds." *Enochs v. Brown*, 872 S.W.2d 312, 318 (Tex. App.—Austin 1994, no writ), *disapproved of on other grounds by Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003). Any material modification to an agreement subject to the statute of frauds must be in writing. *Petrohawk Prop's, L.P. v. Jones*, 455 S.W.3d 753, 764 (Tex. App.—Texarkana 2015, pet. dism'd).

[5] We disagree with the Flores Family's assertion that Gonzalez bore the burden at the summary judgment stage to establish that his dealings were fair as a matter of law. In support of their proposition, the Flores Family relies on the Texas Supreme Court case *Archer v. Griffith* and its progeny. *See* 390 S.W.2d 735 (Tex. 1964). *Archer* provides that a presumption of unfairness attaches to a contract entered into during the existence of the attorney-client relationship. *Id.* at 739; *see Robinson v. Garcia*, 804 S.W.2d 238, 248 (Tex. App.—Corpus Christi 1991). However, the Flores Family did not bring any cause of action challenging the propriety of a contract entered into after the attorney-client relationship was established. Therefore, *Archer* is inapposite.

16

The admission or exclusion of evidence rests within the sound discretion of the trial court.  *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995).  A trial court abuses its discretion in admitting or excluding evidence if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable.  *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).  To show the trial court abused its discretion, the appellant must demonstrate:  (1) the court erred in not admitting the evidence; (2) the excluded evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused rendition of an improper judgment in the case.  *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 422 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also* TEX. R. APP. P. 44.1(a) (discussing reversible error).  If there is a legitimate basis for the trial court's evidentiary ruling, the appellate court must uphold the ruling.  *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

## B.    Analysis

An affirmative defense must be pleaded in a responsive pleading, or the defense will be waived.  TEX. R. CIV. P. 94; *Roth v. JPMorgan Chase Bank, N.A.*, 439 S.W.3d 508, 513 (Tex. App.—El Paso 2014, no pet.).  As noted above, the Flores Family's live pleadings did not assert the affirmative defense that they fired Gonzalez for cause.  The Flores Family belatedly attempted to plead the defense following the expiration of the

17

pleading deadline. The trial court, however, denied the Flores Family's motion for leave, and that ruling is not challenged on appeal.

The issue of good cause is defensive in nature and relates to the attorney's right to recover under the contract of employment. *See Rocha v. Ahmad*, 676 S.W.2d 149, 156 (Tex. App.—San Antonio 1984, writ dism'd); *Howell*, 534 S.W.2d at 740 ("The burden of proving the happening of a contingency which, by the terms of the contract, would discharge the party from liability, or any default or refusal to perform on the part of the plaintiff that would excuse the performance by the defendant, is on the party who seeks to avoid the contract or excuse a failure to perform it on that ground."); *see also Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 646 (Tex. App.—Dallas 2015, no pet.) ("The contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded."). If the former client pleads and proves good cause for discharge, then the attorney is not entitled to recover under the contract of employment. *Rocha*, 676 S.W.2d at 156. Because the Flores Family failed to plead good cause, they waived the defense. *See* Tex. R. Civ. P. 94; *Roth*, 439 S.W.3d at 513. Therefore, the trial court did not abuse its discretion in excluding evidence relating to the defense. *See Bristol Hotel*, 65 S.W.3d at 647.

Even if we were to find error, we cannot conclude that the error probably caused rendition of an improper judgment in the case. *See Able*, 35 S.W.3d at 617. Through their offer of proof, the Flores Family presented Criselda's affidavit and deposition testimony which was previously filed in their response to Gonzalez's motion for summary

18

judgment. The Flores Family also presented Joel's deposition testimony. We have previously discussed the allegations found in Criselda's testimony. Joel's deposition testimony is cumulative of Criselda's and does not raise any new allegations. Nothing in the Flores Family's proffered evidence would serve to refute any of the elements of Gonzalez's breach of contract claim. *See Marquis Acquisitions, Inc. v. Steadfast Ins. Co.*, 409 S.W.3d 808, 813 (Tex. App.—Dallas 2013, no pet.) ("To succeed on a breach of contract claim, a plaintiff must show: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."). Rather, the evidence pertains to the Flores Family's claims for breach of fiduciary duty, fraud, and fraud by non-disclosure, which were resolved through summary judgment as set out earlier in this opinion. We overrule the Flores Family's second issue.

## IV. ATTORNEY'S FEES

By their third issue, the Flores Family argues "[t]he trial court's award of unsegregated attorney's fees was an abuse of discretion." The Flores Family also argues that "the amount of fees . . . awarded is not supported by legally sufficient evidence."

### A. Segregation of Fees

#### 1. Standard of Review and Applicable Law

We review a trial court's award of attorney's fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). A trial court abuses its discretion

when it acts without regard for any guiding rules or principles. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Parties claiming attorney's fees must "segregate fees between claims for which they are recoverable and claims for which they are not" and are "required to show that attorney's fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) (quoting *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991)). "Intertwined facts" do not make fees for unrecoverable claims recoverable. *Id*. at 313–14. "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id*. Thus, "[i]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, the claimant must segregate recoverable from unrecoverable fees." *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 506 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Tony Gullo*, 212 S.W.3d at 313–14).

"[T]o prevail on a contract claim a party must overcome any and all affirmative defenses (such as limitations, res judicata, or prior material breach), and the opposing party who raises them should not be allowed to suggest to the jury that overcoming those defenses was unnecessary." *Tony Gullo*, 212 S.W.3d at 314. When a defendant asserts a counterclaim that the plaintiff must overcome in order to fully recover on its contract claim, the attorney's fees necessary to defeat that counterclaim are likewise recoverable. *See Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (per curiam).

20

### 2. Analysis

The Flores Family does not dispute that attorney's fees may be awarded in connection with breach of contract and declaratory judgment actions. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 38.001(8), 37.009 (West, Westlaw through 2015 R.S.). However, they maintain that Gonzalez failed to segregate the fees incurred prosecuting his frivolous pleading claim. The Flores Family argues that any fees associated with the advancement of the frivolous pleading claim are unrecoverable. With respect to segregation of attorney's fees, the trial court stated the following:

> The court finds that the factual matters are so intertwined as to the various claims, causes of action and defensive matters so as to make any segregation impractical and impossible because of the intertwined nature of such, hereby awards attorneys' fees in favor of [Gonzalez] against the [Flores Family] and makes—and also finds that they are reasonable and necessary and customary in the amounts of the—at the trial court level.

We agree with the trial court's finding in this regard. In addition to asserting a breach of contract claim, Gonzalez's live pleading alleged that the Flores Family's affirmative claims were frivolous. Gonzalez was required to overcome the Flores Family's claims for breach of fiduciary duty, fraud, and fraud by non-disclosure, in order to recover on his breach of contract claim. Gonzalez's claim that the Flores Family's pleadings were frivolous was pursued to overcome those claims. Therefore, the attorney's fees incurred were intertwined and thus recoverable. *See Varner*, 218 S.W.3d at 68–70.

### B. Legal Sufficiency

### 1. Standard of Review and Applicable Law

We may sustain a legal sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller,* 168 S.W.3d at 827. Texas courts consider eight factors when determining the reasonableness of attorney's fees:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). A trial court is not required to receive evidence on each of these factors. *State & Cty. Mut. Fire*

22

*Ins. Co. ex rel. S. United Gen. Agency of Tex. v. Walker*, 228 S.W.3d 404, 408 (Tex. App.—Fort Worth 2007, no pet.). In reviewing an award of attorney's fees, we look at the entire record, the evidence presented, the amount in controversy, the common knowledge of the participants, and the relative success of the parties. *See Garrod Invs., Inc. v. Schlengel*, 139 S.W.3d 759, 767 (Tex. App.—Corpus Christi 2004, no pet.).

### 2. Analysis

Gonzalez presented evidence on several of the *Arthur Anderson* factors in support of his request for attorney's fees. Gonzalez introduced the itemized billing records for the three firms providing representation. Robert Valdez, a lawyer with over thirty years of professional experience, was retained by Gonzalez to evaluate the attorney's fees incurred by Gonzalez. Valdez reviewed the billing statements and explained the role of each law firm representing Gonzalez. Valdez opined that the litigation was lengthy and complex. Valdez testified that he did not see any duplicative work in the billing records. Based on his review of the billing records and docket summary, Valdez concluded that it was likely that the firms were precluded from accepting other employment.

Valdez further testified that he has been "blessed with a lot of work in the Rio Grande Valley," and he was familiar with the rates charged in the area. Valdez concluded that Gonzalez's attorneys charged a fee that fell within the range of rates in the area. Valdez stated that based on his review of how the case progressed, the results obtained were "superior." Valdez also observed that the case did not "lay around" and that the attorneys were engaged in a "very active motion practice." Valdez testified that the attorneys involved "got along well to move the case forward," and the law firms

23

cooperated with the wishes of Gonzalez. With respect to the reputation and ability of the attorneys, Valdez stated that he was familiar with several of the attorneys and that they had "very good reputations" in the Rio Grande Valley. Valdez was familiar with the billing arrangement between Gonzalez and the attorneys, and noted that Gonzalez was charged on an hourly basis.

Considering the *Arthur Andersen* factors, we hold that there was some evidence in the record to support the attorney's fee award. *See Arthur Andersen*, 945 S.W.2d at 818; *Uniroyal Goodrich*, 977 S.W.2d at 334.

## C. Summary

We conclude the trial court did not abuse its discretion in awarding unsegregated attorney's fees. *See Varner*, 218 S.W.3d at 68–70. We also conclude the award of attorney's fees was supported by legally sufficient evidence. *See Uniroyal Goodrich*, 977 S.W.2d at 334. We overrule the Flores Family's third issue.

### V. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Delivered and filed the
6th day of October, 2016.

24